## BROWER *v.* BROWER.

*(Circuit Court, D. Minnesota. January 8, 1887.)*

EQUITY—ACCOUNTING—ADVANCES ON SECURITY OF IRREVOCABLE POWER OF ATTORNEY.

In an action for an accounting wherein the complaint alleged a partnership, it appearing that there was no partnership, but that complainant, after taking from defendant an irrevocable power of attorney, authorizing complainant to take possession of the lands then owned, or which might thereafter be owned, by defendant, advanced the money to be put into real estate and a newspaper, on the security thereof, the court directed that the defendant be adjudged the owner of the real estate and newspaper, that complainant have an equitable lien on the property for his advances, with interest, and that the property be sold to satisfy the same.

In Equity.

*J. V. Brower* and *C. D. Kerr*, for complainant.

*D. B. Searle*, for defendant.

BREWER, J. This is a family quarrel, and, as such, bitter and un-pleasant. It is brother against brother, other members of the family siding with each. The complainant alleges·a partnership, and claims an accounting. The defendant denies partnership. The transactions between the brothers, as developed in the pleadings and by the testimony, extend from the years 1871 or 1872 to 1885, a period of 13 or 14 years. The property in controversy, as alleged in the bill, is—*First*, the newspaper published at Sauk Centre, known as the Sauk Centre Tribune; *second*, two pieces of real estate in Sauk Centre, one occupied by the defendant as his homestead; and, *third*, several tracts of land outside of Sauk Centre. With regard to the third class of properties, the defendant in his answer admits that he has no claim, and, in pursuance of the·direction of this court at the hearing, deeds therefor have been executed by the defendant and his wife, and delivered to complainant. This should have been done by the defendant of his own motion, and before any suit. The defendant acted badly in withholding this property, to which he had no pretense or claim, and in attempting to compel thereby the complainant to abandon all other claims.

I now proceed to outline briefly the history of the relations between these brothers, and the claims of the complainant. The complainant is the elder brother. In 1871 or 1872 the defendant, then about 20 years of age, was afflicted with a severe sickness, from which he recovered, but with the entire loss of his hearing. From that day to this he has been totally deaf. He had had comparatively little early education, and was wholly unfit for business. His sickness occurred while he was at his father's house. After his sickness he went with complainant to St. Paul to consult physicians about the possibility of a cure for his deafness. The visit was ineffectual. He returned home, and worked about his father's place for two or three years. Then he attended the Institution for the deaf, at Faribault, where he learned the art of printing. After this he worked in a printing-office for a short time, and in 1879 the complainant purchased the Todd County Argus, and placed the defendant in charge. In October, 1880, the defendant became dissatisfied, and the Argus was sold; the complainant receiving the entire proceeds of the sale. Later in the fall of that year the Stearns County Tribune was established, the complainant advancing all or nearly all the money therefor. This is the paper whose name afterwards changed to the Sauk Centre Tribune, is the first property above mentioned in which the complainant claims a half interest as partner.

On October 31, 1876, defendant executed to complainant an irrevocable power of attorney. Complainant testifies that at this time a settlement was had between the brothers; that $231 was then found due from defendant to him; and that, in satisfaction and payment of this amount, as expressed in the instrument itself, this power of attorney was executed.

The power of attorney authorizes the complainant to take possession of all lands then owned, or which might thereafter be owned, by defendant, or in which he might have any interest, excepting such as defendant should enter under the homestead laws of the United States, to sell or dispose of the same in any way complainant might see fit, and appropriate the entire proceeds to his own use. About this time, as complainant testifies, he was having some trouble with his wife; and, being somewhat engaged in the real estate business, desired to have some one in whose name he could place title to his real estate, and carry on such business. If this was the entire scope and purpose of this instrument, and if he was simply releasing to his brother this moderate claim in payment for the use of his name in his own business, the transaction was perfectly legitimate. The consideration, though small, was, as between brothers, not unreasonable compensation for valuable assistance. Such, I think, from all the circumstances, was at the time the intent of the parties, and the transaction one which might fairly be entered into between brothers, each prompted by fraternal confidence and affection. If there was also the thought on the part of the elder brother, a man of business capacity and experience in the affairs of life, that it would also operate temporarily to protect his younger brother, grievously afflicted, ignorant of business, and liable to be imposed upon, there would be nothing in the transaction to criticise or condemn; but if the intent of the complainant was to prevent his brother from ever becoming a free man as to the purchase, holding, and sale of real estate, if he thought by this to hold his brother forever within his grasp, and to debar him forever from investing his own earnings in real estate, for his own benefit, and subject to his own control, as, smarting under the bitterness of this present controversy, complainant now seems to claim,—the transaction is one which all honorable men must condemn, and the contract one which, in its entirety, no court of equity would ever enforce. It would be such an alienation of personal rights as, attempted to be accomplished between brothers situated as these were, would find its most fitting historic parallel in the ancient record of a brother's sale of his birthright for a mess of pottage. So far as the contract evidenced by this power of attorney is made the basis of complainant's claim to the real estate in Sauk Centre, it must be rejected, and the rights of the parties to those tracts determined by the facts as to their purchase.

With respect to these tracts, it appears that they were selected by defendant, and that he intended to purchase them for his own benefit; and also that the complainant assisted in obtaining the title, advancing money therefor. It may well be that the complainant relied upon the power of attorney as furnishing him abundant security on this real estate for all moneys advanced, and I think he is entitled to the benefit of that contract, as giving him an equitable lien. This power of attorney having been of record, no one could acquire title to or lien upon these tracts without notice of complainant's rights; so that, to the extent of his interest therein, he is entitled to a first lien.

In October, 1880, the Argus property was sold for $2,500, all of

which was paid to the complainant, he at the time taking the notes and security given for the amount. Complainant testifies that this was a second settlement, and that this purchase price was received by him as a full settlement of all claims against his brother up to that time. I think the testimony bears out this claim, and that all inquiry as to the accounting between the brothers must be limited to the period subsequent to that time.

With reference to the Sauk Centre Tribune, it is undisputed that in its establishment, and for its benefit, complainant has advanced considerable money. His claim, however, that the property has been and still is partnership property cannot, I think, be sustained. Putting one side, as irreconcilable, the testimony of the two parties, I think the weight of the other testimony is to the effect that the complainant advanced this money to establish his brother in business, with the understanding that the newspaper property was to be the property of the defendant, and that he was to be reimbursed the moneys advanced by him. As clearly pointing to this, may be noted the bill of sale executed by complainant to defendant, the notice prepared by him, and published in the paper, the general management of the property by defendant during these years, and the admissions of complainant to his mother. It is true there are writings of the defendant, and other testimony, clearly recognizing the fact that complainant had some interest in the property, but nearly all are consistent with the idea of an interest by advancement of money, and do not assert an interest as a partner or a joint owner. It is obvious to my mind, however, from all the testimony, that both parties regarded the property as held by defendant as security to the complainant for the amount of his advances, and it would be simple justice to decree the complainant entitled to an equitable lien for whatever balance may be due him on such advances.

While the bill proceeds upon the theory of a partnership, and prays an accounting, yet the allegations are broad enough to justify the court in ordering an accounting, and decreeing a lien. This decree therefore will be entered: *First*, adjudging the defendant the owner of the tracts of ground in Sauk Centre, and of the Sauk Centre Tribune; *second*, adjudging the complainant entitled to a lien upon the two tracts of ground in Sauk Centre, separately, for the moneys advanced by him, less amounts received therefrom, with legal interest to date; *third*, adjudging that complainant has a lien upon the Sauk Centre Tribune property in like manner, for moneys advanced by him for the purchase or benefit of that property, less amounts so received therefrom, with interest to date; *fourth*, ordering the sale of these several properties for the balances which shall be found due; *fifth*, referring this matter to Mr. Shipman, master in chancery, to examine the testimony, and report the state of these accounts; *sixth*, continuing all orders of injunction until the final disposition of this case.

In making this accounting the master will consider all accounts and transactions between the parties closed and settled up to November 1, 1880, and will make no inquiry as to matters antecedent to that time. As

to subsequent dealings between the parties, he will state the account as to each tract of land, and as to the newspaper property, separately, and, if there be transactions between the parties outside of these matters, he will state an account between the parties as to them for the assistance of the court in making a final disposition of the case.

NELSON, J. I agree to the decree ordered.